**Sen. William S. COHEN,
et al., Plaintiffs,**

v.

**Donald RICE, Secretary of the Air
Force, et al., Defendants.**

**Civ. No. 91–0282–B.**

United States District Court,
D. Maine.

Sept. 18, 1992.

---

Severin M. Beliveau, Preti, Flaherty, Beliveau & Pachios, Augusta, Me., for plaintiffs.

Mark W. Batten, Jeffrey S. Gutman, Vincent M. Garvey, U.S. Dept. of Justice, Washington, D.C., for defendants.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge

This action for a declaratory judgment and injunctive relief is before the Court on Defendants' Motion for Summary Judgment. The Plaintiffs allege that they were injured by the failure on the part of the Secretaries of the Air Force and Defense and the Base Closure and Realignment Commission ("Base Closure Commission" or the "Commission") to act pursuant to the statutory requirements delineated in the Base Closure Act ("Base Closure Act" or the "Act"), Pub.L. No. 101–510, 104 Stat. 1808 (1990). Plaintiffs seek to enjoin the Secretary of Defense and the Secretary of the Air Force from carrying out the decision to close Loring Air Force Base ("Loring" or the "Base"), and from taking any actions that may interfere with the ability of Loring to operate as though it were not scheduled for closure. Plaintiffs also request that the Court declare: (i) that the realignment recommendation to close Loring, provided by the Secretaries of the Air Force and Defense, was developed in a manner inconsistent with the requirements of the Base Closure Act; (ii) that the Secretaries' adoption of the closure findings, conclusions and recommendations made by the Air Force with respect to the decision to close Loring was arbitrary and capricious and otherwise not in conformity with law; (iii) that the closure and realignment recommendations submitted by the Commission to the President with respect to Loring were made in violation of the Act; and (iv) that the Commission's adoption of the list of closure and realignment findings, conclusions and recommendations made by the Air Force with respect to the decision to close Loring was arbitrary and capricious and not otherwise in conformity with law.

Agency actions, such as actions by the Secretary of Defense and the Base Closure Commission, may be the subject of judicial review if they fall within the purview of the Administrative Procedure Act ("APA"). 5 U.S.C. § 701 *et seq.* Plaintiffs acknowledge that substantive decisions made under the Base Closure Act are not subject to judicial review under the APA because such decisions are made by the President and, therefore, are not agency action. However, Plaintiffs assert that the procedures by which the Secretary of Defense and the Commission make recommendations to the President, under the Base Closure Act, are subject to judicial review under the APA. Based on the U.S. Supreme Court's June 26, 1992 decision in *Franklin v. Massachusetts,* which discusses the parameters of final agency action, this Court is satisfied that the procedures by which the President receives recommendations from the Base Closure Commission and the Secretary of Defense can not be considered "final agency action" under the APA. Therefore, such procedures are not subject to judicial review. Accordingly, Defendants' motion is *GRANTED.*

## I. BACKGROUND

### A. *The Complaint*

This controversy revolves around the decision to close Loring. Loring, which is located in Limestone, Maine, is one of twenty-one Strategic Air Command Bases maintained by the Air Force in the continental United States. In April 1991, pursuant to the Base Closure Act, the Secretary of

Defense recommended that fourteen Air Force facilities, including Loring, be closed and that six be realigned. *See* 56 Fed.Reg. 15184 (April 15, 1991). Thereafter, the Base Closure Commission engaged in an analysis and review of the Secretary's recommendations. The Commission ultimately recommended that one of the Air Force facilities recommended for closure by the Secretary remain open, but concurred with the Secretary's recommendation that Loring be closed.

On July 10, 1991, President Bush approved the recommendations of the Commission. *See* 27 Weekly Comp.Pres.Doc. 930 (July 15, 1991). Following the President's approval, the House and Senate Armed Services Committees held hearings on the Commission's recommendations.

On July 30, 1991, as permitted by Section 2908 of the Act, the House considered a resolution, sponsored by Congressional plaintiff Rep. Snowe, to disapprove the Commission's recommendations. *See* 137 Cong.Re. H6006 (daily ed. July 31, 1991). The House entertained floor debate on the proposal, including the objections of Rep. Snowe which parallel the allegations set forth here. *Id.* By a vote of 364 to 60, the House rejected the proposal, thus permitting the closure and realignment process to continue. *See* 137 Cong.Rec. H6039.

Having exhausted their remedies in the political arena, the plaintiffs, United States Senators William S. Cohen and George J. Mitchell, United States Representative Olympia J. Snowe, Governor John R. McKernan, Jr., the Towns of Limestone, Ashland, Caswell, Fort Fairfield, Mars Hill, New Sweden, Van Buren, the Cities of Caribou and Presque Isle, Aroostook County, the Save Loring Committee, the American Federation of Government Employees Local Union Chapter # 2943 and Alan Mulherin, brought their challenge to the Court.

B. *Procedural Posture*

Defendants moved to dismiss the Plaintiffs' complaint on February 28, 1992. On May 20, 1992 the Court issued an order denying the motion in part and granting it in part. 800 F.Supp. 999. Specifically, the Court dismissed Plaintiffs' claims which focused on alleged deficiencies in the performance of the Secretaries of the Air Force and Defense. The Court stated that deficiencies in this category were not judicially reviewable because the Secretaries' recommendations are clearly committed to their discretion under the Act and because Congress provided for alternative methods of review for the Secretaries' recommendations. Order and Mem. at 9–10 (May 20, 1992). In addition, the Court dismissed Plaintiffs' challenges to the decision-making process by which the Commission reviewed the Secretary of Defense's recommendations, finding that these challenges, like the challenges to the recommendations of the Secretaries, were not subject to second guessing by the judiciary. Order and Mem. at 11 (May 20, 1992). However, the Court denied Defendants' Motion to Dismiss with regard to Plaintiffs' claims that the Secretary of Defense failed to transmit to the General Accounting Office ("GAO"), members of Congress and the Commission all the information used in making the base closure recommendations in question. The Court also denied the Defendants' Motion to Dismiss with regard to the Plaintiffs' assertion that the Commission failed to hold public hearings as required by the Act. In denying the Defendants' motion on these claims, the Court adopted the reasoning of the Third Circuit in *Specter v. Garrett*, 971 F.2d 936 (3rd Cir.1992). The Court denied Defendants' motion in part, finding no clear congressional intent under the Base Closure Act to preclude judicial review of the Plaintiffs' claims under the APA. Subsequent to this Court's order on Defendant' Motion to Dismiss, the Supreme Court's interpretation of reviewable final agency action under the APA was handed down in *Franklin v. Massachusetts*, —— U.S. ——, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). In light of *Franklin*, the Court is satisfied that Plaintiffs' remaining claims must now be dismissed. *Franklin* clearly holds that the APA does not provide a mechanism for judicial review in this context.

## C. *The Administrative Procedure Act*

The APA sets forth the procedures by which federal agencies are held accountable to the public and their actions subject to review by the courts. The APA provides that any "person ... aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review thereof." 5 U.S.C. § 702. The APA provides that the reviewing court will "set aside agency action ... found to be ... arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; ... contrary to constitutional right ...; [or] without observance of the procedure required by law." 5 U.S.C. § 706(2). Review under the APA is available, however, only "to the extent that ... statutes [do not] preclude judicial review" and the agency action "is [not] committed to agency discretion by law." 5 U.S.C. § 701(a). In addition, the APA is available only for review of *"final agency action* for which there is no other adequate remedy in a court." 5 U.S.C. § 704 (emphasis added).

## D. *The Base Closure Act*

In this case the Plaintiffs seek to apply the APA to actions taken pursuant to the Base Closure Act. The Defense Base Closure and Realignment Act of 1990 is the latest in a series of statutes enacted by Congress during the past fifteen years to regulate the process by which domestic military bases are closed and realigned. Section 2901 of the Act declares that the law's purpose is to provide a fair process that will result in the timely closure and realignment of military installations inside the United States. § 2901(b).

Under the Act, the Secretary of Defense must submit to Congress, as part of the Defense Department's budget justification documents, a force-structure plan with recommendations for the closure and realignment of military installations. § 2903(a)–(b). The Act requires the Secretary to publish in the Federal Register and transmit to the congressional defense committees the criteria to be used by the Department of Defense in making recommendations for installation closures. § 2903(b)(2)(A).

In addition, the Act establishes a Commission of eight members to be appointed by the President with the advice and consent of the Senate. § 2902(c). The Commission receives the Secretary's recommendations and, after conducting public hearings on them, must transmit to the President a report containing the Commission's findings and conclusions based on its review and analysis of the Secretary's recommendations. § 2903(d).

The Act provides that the Commission is to be assisted in its task by the GAO. The Secretary must give the GAO all the information used in making its initial recommendations in order to facilitate the GAO's review. § 2903(c)(4). The GAO must report on the Secretary's recommendations to the Congress and to the Commission. § 2903(d)(5).

Once the Commission has transmitted its recommendations to the President, the President may approve or disapprove the Commission's recommendations in whole or in part, and must transmit that determination to the Commission and to Congress. § 2903(e)(2)(3). If the President approves the Commission's recommendations, Congress has 45 days from the date of this approval to pass a joint resolution disapproving of the recommendations in their entirety. §§ 2904(b), 2908. If such a resolution is enacted, the Secretary of Defense may not close the bases approved for closure by the President. § 2904(b).

If the President disapproves of the Commission's recommendations in whole or in part, the recommendations must be returned to the Commission with the reasons for the disapproval. § 2903(e)(1)–(3). The Commission must then reconsider its recommendations in light of the President's actions and submit a revised list for the President's consideration. § 2903(e)(3). If the President does not transmit an approved list of recommendations to Congress by September 1 of the year in which the Commission has transmitted recommendations, the base closure process for that year is terminated. § 2903(e)(5).

### E. *The Nature of Relief Sought by the Plaintiffs*

The Plaintiffs seek a remand of the recommendation to close Loring to the Commission to correct the process under which the recommendation was promulgated. The Plaintiffs note that the effect of such a remand on the decision of the President cannot be determined until after the Commission has reconsidered its actions. Pls.' Response Defs.' Mot.Summ.J. at 10.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In light of the Supreme Court's holding in *Franklin v. Massachusetts*, it is clear that the actions the Plaintiffs complain of do not constitute final agency action under the APA. Because there is no final agency action, there is no legal basis under which Plaintiffs' factual allegations can be reviewed.

### III. DISCUSSION

While this Court and the Third Circuit in *Specter* found no clear evidence of congressional intent to preclude all judicial review of actions taken pursuant to the Base Closure Act, the issue of whether there had been final agency action was not specifically addressed. In *Franklin*, the State of Massachusetts challenged the Secretary of Commerce's inclusion of military personnel serving overseas for census purposes. —— U.S. ——, 112 S.Ct. 2767. For only the second time since 1900, the Secretary of Commerce allocated the Department of Defense's overseas employees to particular states. The Secretary counted these employees as residents of their "home of record", as designated in their personnel files. This allocation altered the relative state populations enough to shift the apportionment of Representatives which, under the Constitution, must be based on the "actual Enumeration of persons in each State." Art. I, § 2, cl. 3; Amdt. 14, § 2.

The statutory scheme which fulfills this constitutional command creates an interlocking set of responsibilities for the Secretary of Commerce and the President. This interlocking set of responsibilities is comparable to those of the President, the Base Closure Commission and the Secretary of Defense under the Base Closure Act. Under the apportionment statutes, the Secretary of Commerce is required to take a decennial census of the population and report the collected information to the President. 13 U.S.C. § 141(a)–(b). The President then sends Congress a statement, based upon data from the decennial census, showing the number of persons in each State and the number of Representatives to which each state would be entitled under an "apportionment of the then existing number of Representatives by the method known as the method of equal proportions...." 2 U.S.C. § 2a(a).

In *Franklin*, the President's acceptance of the Secretary's allocation of overseas military personnel to their home of record, approved of an apportionment scheme which altered state populations enough to shift a Representative from Massachusetts to the State of Washington. Massachusetts and two of its registered voters brought suit against the Secretary of Commerce, among others, challenging the allocation of the overseas personnel as arbitrary and capricious under the APA. Under these facts, the *Franklin* court held that there was no final agency action subject to review. —— U.S. at ——, 112 S.Ct. at 2773. The *Franklin* court applied *Abbott Laboratories v. Gardner*, which states that one must look to whether the impact of agency action is "sufficiently direct and immediate" to determine whether such an action is final. 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). Applying the *Abbott* test, the *Franklin* court held that the "Secretary of Commerce's report to the President carries no direct consequences for the reapportionment [and, therefore,] it serves more like a tentative recommendation than a final and bind-

ing determination." —— U.S. at ——, 112 S.Ct. at 2774. Because no statute prohibited the President from rejecting the Secretary of Commerce's report, and because no statute ruled out an instruction by the President to the Secretary to reform the census, the Supreme Court held that the ruling of the Secretary of Commerce was similar to the ruling of a subordinate official and, therefore, not final agency action. *Id.*

In *Abbott*, the Court found final agency action when an agency promulgated regulations and conformity with those regulations caused injury. 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In the current controversy, the Plaintiffs did not change their position in reliance on the recommendations of the Secretary and the Commission. In fact, the Plaintiffs would not be injured but for the President's *acceptance* of the Commission's recommendations. Further, while the reviewability of Presidential action under the APA may have been an open question before *Franklin*, *Franklin* holds that Presidential action is not reviewable under the APA. —— U.S. at ——, 112 S.Ct. at 2776.

The holding and reasoning of *Franklin* are directly applicable to the facts of the present controversy. In *Franklin*, the Supreme Court stated that agency action is "final" when an agency "complete[s] its decision-making process and . . . the result of that process is one that will *directly* affect the parties." *Id.* at 4784 (emphasis added). The *Franklin* court examined a number of statutes which created interlocking responsibilities between agencies and the Executive. *See e.g.* 20 U.S.C. § 1017(d); 30 U.S.C. § 1315(c); 42 U.S.C. § 3015(f); 42 U.S.C. § 6633(b)(2). The Court distinguished statutes under which the President is expressly required to transmit an agency's report directly to Congress from those in which the President is not so required, and held that while the former may generate final agency action, the latter do not. *Id.*

Under the Base Closure Act, the President is not required to submit the Commission's recommendations to Congress. In fact, under the Base Closure Act, the President has even greater discretion than in the case of the census in *Franklin*. Under the Constitution, the President can not halt the taking of the census whereas, under the Base Closure Act, the President has the power to terminate the base closure process by not transmitting an approved list of recommendations to Congress. Because the President is not required to transmit the Commission's recommendations to Congress, the recommendations carry no *direct* consequences for base closure and, therefore, are not final agency action.

At oral argument, Plaintiffs sought to distinguish *Franklin* from the case at bar by noting that in *Franklin* the Supreme Court stated that the Secretary of Commerce's report to the President was an unusual candidate for consideration as agency action within the APA. The Supreme Court said that the Secretary of Commerce's role in regard to the census was difficult to classify as agency action because, among other things, the Secretary of Commerce's report is not promulgated to the public in the Federal Register and no administrative record is generated. *Id.* at ——, 112 S.Ct. at 2773. Plaintiffs argued that because the Commission's actions are subject to publication in the Federal Register and because the Commission is required under the Act to hold public hearings before issuing its recommendations, the Commission's issuance of recommendations can be more readily viewed as agency action than the Secretary of Commerce's report. The Plaintiffs suggest that because the Commission's actions fall into a more traditional pattern of agency proceedings, its actions are reviewable despite the Supreme Court's conclusion that the Secretary of Commerce's actions are not. This argument is inapposite because even if the Commission's actions are more readily classified as agency action, it is the determination of what constitutes *final* agency action that is of significance here.

Plaintiffs also seek to distinguish *Franklin* by suggesting that *Franklin* precludes only substantive challenges to agency action and not claims that an agency followed improper procedures. Pls.' Response Defs.' Mot.Summ.J. at 15. This distinction

is flawed because under *Franklin,* the finality of an agency's action does not turn on the nature of the challenge to it. Under the Base Closure Act the only final action would be that of the President. Permitting judicial review of an intermediate step in the process, even on purely procedural grounds, would be inconsistent with *Franklin* and would ignore the limitation imposed by the APA.

### IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment is *GRANTED*[1].

SO ORDERED.

---

**1.** In light of this disposition the other arguments raised by Defendants in support of their motion need not be addressed.