**ROLE MODELS AMERICA, INC., Plaintiff,**

v.

**Thomas E. WHITE, Secretary of the Army, et al., Defendants.**

**No. CIV. A. 01–1595 (RMU).**

United States District Court, District of Columbia.

Jan. 15, 2002.

Joseph R. Whaley, Esq., Rockville, MD, for Plaintiff.

Thomas Ray, Esq., Asst. United States Attorney, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER; DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION, AND; DENYING AS MOOT THE DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE

URBINA, District Judge.

### I. INTRODUCTION

This matter comes before the court on Role Models America, Inc.'s ("the plaintiff") motions for a temporary restraining order and preliminary injunction, and the defendants' motion to dismiss the complaint with prejudice. After consideration of the parties' submissions and relevant law, the court concludes that the plaintiff has failed to sufficiently demonstrate that it has a substantial likelihood of success on the merits, that it will be irreparably harmed, that the balance of hardships favors the issuance of an injunction, or that the public interest will be furthered if the court were to grant the injunctive relief requested. Accordingly, the court will deny the plaintiff's motions for injunctive relief and deny as moot the defendants' motion to dismiss with prejudice, along with the other various motions that have been subsequently filed by the plaintiff.

### II. BACKGROUND

#### A. Factual Background

By way of background, the dispute in this case is centered around the disposal of surplus military property that is part of Fort Ritchie Military Reservation, located in Washington County, northeast of Hagerstown, in the community of Cascade, Maryland at the intersection of Routes 500 and 491. *See* Def.'s Ex. 1. The Fort Ritchie property is available under the provisions of the Federal Property and Administrative Services Act of 1945, as amended 40 U.S.C. § 484(k), and the Base Closure Community Redevelopment and Homeless Act of 1994, as amended 10 U.S.C. § 2687. *See id.* The surplus real property at Fort Ritchie (hereinafter "the surplus property") encompasses approximately 635.65 acres and contains 252 buildings, totaling 1,384,000 square feet of space. *See id.* The current range of uses of the surplus property includes administrative, residential, retail, open recreation, and special purpose space. *See id.*

The surplus property is currently leased to Pen Mar Development Corporation of Maryland ("Pen Mar"). *See* Pl.'s Ex. 9 ¶ 1.2. The General Assembly of the State of Maryland created Pen Mar as a public corporation for the purpose of developing

the Fort Ritchie property. *See* Pl.'s Ex. 11, 13, 14, 15. As such, Pen Mar is a creature of Maryland statute. *See* Chapter 737, Laws of Maryland 1997, Annotated Code of Maryland, Article 83A, § 5–1201 *et seq.*

The plaintiff is a Maryland 501(c)(3) non-profit corporation with its principal place of business in Cascade, Maryland. *See* Compl. ¶ 3. Its objective is to establish and operate a national model Junior Reserve Officers Training Corps college-preparatory magnet school for the nation's high school "drop-outs." *See id.* Congress funds the plaintiff's program through the U.S. Department of Labor. *See* Pl.'s Ex. 16. The plaintiff intends to build military-style schools using surplus property from military base closures, which provide the facilities needed to operate a large residential program of this type. *See id.*

On March 10, 2000, the plaintiff entered into a sublease agreement with Pen Mar for use of the surplus property. *See* Pl.'s Ex. 9. The terms of that agreement require the plaintiff to pay Pen Mar $1,265,955.00 per year in quarterly installments of $316,498.75 for approximately 275,000 square feet of space. *See id.* ¶ 1.7. The agreement further provides both parties with the option to extend the lease. *See id.* ¶ 1.4. Moreover, the parties noted in the agreement that Pen Mar is acquiring full title to the Fort Ritchie property. *See id.* ¶ 1.2.

Defendant Thomas E. White,[1] Secretary of the Army, is named as a defendant in this action in his official capacity along with the Army (collectively "the defendants"). *See* Compl. ¶ 4. The defendants plan on transferring nearly 280 acres to Pen Mar in the first phase of the Fort Ritchie comprehensive redevelopment plan. *See* Pl.'s Mot. for Expedited Consideration ("Pl.'s Mot. for Exped. Consid."), Ex. 2.

As of April 2001, Pen Mar had at least two pending suits against the plaintiff in Maryland courts respecting Fort Ritchie. *See* Compl. ¶ 29. The first suit concerns Pen Mar's alleged return of the plaintiff's rent check and a subsequent action against the plaintiff for eviction and back payment in Maryland state court. *See id.* The second suit concerns the improper display of flags at Fort Ritchie. *See id.*

The plaintiff seeks to acquire the Fort Ritchie property through a public benefit conveyance pursuant to the Base Closure Act of 1994, as amended 10 U.S.C. § 2687. *See* Compl. ¶ 32. The plaintiff fears that the defendants will resume negotiations with Pen Mar for execution of the memorandum of agreement for property transfer at Fort Ritchie. *See generally* Pl.'s Reply Mem. in Supp. of Mot. for Exped. Consid. The plaintiff contends that conveyance of Fort Ritchie from the Army to Pen Mar would cause irreparable harm to the plaintiff and its ability to establish a successful program for at-risk youth. *See* Pl.'s Mot. for a Preliminary Injunction ("Pl.'s Prelim. Inj. Mot.") ¶ 6. As such, the plaintiff requests that the court order the defendants to re-open the screening process at Fort Ritchie. *See* Compl. at 1, 10. In the alternative, the plaintiff asks the court to order the Army to directly convey the property to the plaintiff as a public benefit conveyance. *See id.* Accordingly, the plaintiff seeks a temporary restraining order and preliminary injunc-

---

1. Although the complaint names Thomas E. White as a defendant in the action, pursuant to Federal Rule of Civil Procedure 25(d)(1), Gregory L. Dahlberg substitutes as the proper defendant. *See* Fed R. Civ. P. 25(d)(1). When a public officer is a party to an action in his official capacity and during its pendency ceases to hold office, the officer's successor is automatically substituted as a party. *See id.*

tion preventing the Army from transferring Fort Ritchie to Pen Mar. *See id.* ¶ 3.

The defendants counter the plaintiff's allegations by arguing three points. First, the defendants argue that the plaintiff cannot show irreparable harm because the plaintiff will continue to operate its Academy under the lease term negotiated in March 2000. *See* Def.'s Opp'n ¶ A. Second, the defendants assert that this court lacks jurisdiction because the matter is not ripe for judicial review. *See id.* ¶ B. On this second point, the defendants state that final agency action has not occurred and that the property has not yet been transferred to Pen Mar. *See id.* Third, the defendants contend that the plaintiff received proper and adequate notice of the availability of the surplus property since the screening process was properly conducted within the meaning of the Base Closure Act. *See id.* ¶ C.

### B. Procedural History

By way of procedural history in the case, on July 24, 2001, the plaintiff filed its complaint alleging the following in support of a temporary restraining order and preliminary injunction: (1) the Army violated Base Closure laws, specifically the Base Closure Act of 1994 ("BCA"), as amended 10 U.S.C. § 2687, and the Administrative Procedure Act ("APA"), as amended 5 U.S.C. § 701 *et. seq.*, by negotiating a transfer of the Fort Ritchie property with Pen Mar, thus triggering a final agency action; (2) the Army violated the BCA and the APA by improper notification of the availability of the surplus property, and; (3) the Army violated the BCA and the APA by conducting an improper screening process of the Fort Ritchie property. The complaint further claims that the Army's actions were arbitrary and capricious, an

abuse of discretion, and contrary to law in violation of the BCA and the APA.

On July 25, 2001, the defendants filed an opposition to the plaintiff's motion for a preliminary injunction. The defendants' opposition states that the Army's actions were not arbitrary and capricious, nor contrary to applicable law. Moreover, the Army contends that it conducted the screening process, notice, and lease in compliance with the directives of the BCA. On August 1, 2001, the plaintiff filed a reply reiterating its challenge to the final agency action under the APA for failure to give proper notice and for inadequate conduct of the screening process. On September 25, 2001, the defendants filed a "motion to dismiss or transfer for improper venue, alternatively, to dismiss as unripe for review, or to dismiss in part for failure to state a claim to which relief is entitled, or for summary judgment." On October 11, 2001, the plaintiff filed a "motion for expedited consideration of the plaintiff's motion for a preliminary injunction, to schedule a hearing on the plaintiff's motions, and for production of documents." [2]

The court now turns to these motions and for the reasons that follow, the court denies the plaintiff's motions for a temporary restraining order and preliminary injunction. Additionally, the court denies as moot the defendants' motion to dismiss along with the plaintiff's various other subsequently filed motions.

### III. ANALYSIS

### A. Legal Standard for a Preliminary Injunction

██ In order to succeed on a preliminary injunction, the movant must demon-

---

**2.** The court denies as unripe the plaintiff's request for production of documents because the court has not scheduled an initial status hearing in the case in order to determine the need for such documents relating to the plaintiff's case-in-chief.

strate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) other interested parties will not suffer substantial harm if the injunction is granted, and; (4) that the public interest favors entry of a preliminary injunction. *See Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C.Cir. 1995) (applying the four-part test); *see also City of Las Vegas v. Lujan*, 891 F.2d 927, 931 (D.C.Cir.1989) (affirming denial of an injunction after the district court properly applied the four-part test); *Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir.1989); *WMATC v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir. 1977) In addition, a preliminary injunction is not granted as a matter of right. *See Eli Lilly and Co. v. Premo Pharmaceutical Labs.*, 630 F.2d 120, 136 (3d Cir.1980). Indeed, injunctive relief is an extraordinary remedy and must be sparingly granted. *See Dorfmann v. Boozer*, 414 F.2d 1168 (D.C.Cir.1969). Thus, a court should not grant injunctive relief absent a clear and convincing showing by the moving party. *See Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944); *accord Kahane v. Secretary of State*, 700 F.Supp. 1162, 1165 (D.D.C.1988).

 A district court must balance the four factors previously named. *See Grigsby Brandford & Co. Inc., v. United States*, 869 F.Supp. 984, 1003 (D.D.C.1994). A court may balance weakness in one or more of the four factors against a particularly strong showing in one of the other factors. *See CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir.1995). Therefore, injunctive relief "may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable harm." *CityFed Fin. Corp.*, 58 F.3d 738, 747. Consequently, although a "particularly strong likelihood of success on the

merits" may entitle a movant to relief upon "a relatively slight showing of irreparable injury," some showing of irreparable injury is always required, "since the basis for injunctive relief in the federal courts has always been irreparable harm." *Id.* (*quoting Sampson v. Murray*, 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)). Likewise, a court may accept a showing that the movant has a "substantial case on the merits" instead of the probability of success on the merits that is ordinarily required, but only when all of "the other three factors strongly favor [the requested] interim relief." *See WMATC*, 559 F.2d at 843. If the movant fails to demonstrate any irreparable injury, however, the court will not inquire further before denying the injunction. *See Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989) (denying preliminary injunctive relief was appropriate where the movant failed to carry the burden of showing sufficient irreparable harm to support a preliminary injunction).

## B. The Court Denies The Plaintiff's Motions for Injunctive Relief for Failure to Make a Clear and Convincing Showing to Justify Relief

### 1. The Plaintiff Fails to Demonstrate the Likelihood of Success on the Merits

 Applying the first prong of the four-part test, the court determines that the plaintiff has failed to sufficiently demonstrate a likelihood of success on the merits of its claim that the defendants' decision to transfer the Fort Ritchie property to Pen Mar, pursuant to the BCA, is arbitrary and capricious or contrary to law. *See* 10 U.S.C. § 2687. Specifically, the plaintiff has not demonstrated a likelihood of success in proving that the defendants' decision is subject to judicial review. *See Taylor*, 56 F.3d at 1506; *Sea Contain-*

*ers Ltd.*, 890 F.2d at 1208; *Holiday Tours, Inc.*, 559 F.2d at 843. Moreover, assuming the court may review the defendant's decision, the plaintiff has not demonstrated a likelihood of success in showing that the defendant's decision lacks a reasonable basis or that it is not in accordance with applicable law. *See id.* The court notes that the BCA appears to provide the necessary legal basis for the Army's regulations that require the Secretary of Defense to publish the selection criteria he proposes to use to recommend installations for closure or realignment in the *Federal Register* for notice and comment. *See* 10 U.S.C. § 2687. Finally, the court concludes that the plaintiff has failed to demonstrate a likelihood of success in showing that the Army's lease and subsequent transfer to Pen Mar violates the BCA. *See Taylor*, 56 F.3d at 1506; *Sea Containers Ltd.*, 890 F.2d at 1208; *Holiday Tours, Inc.*, 559 F.2d at 843. The court will address these points in the order that they are raised in the plaintiff's motion.

### a. Review of the Secretary's Decision under the APA

### (i) The Plaintiff's Claim Relating to the Transfer of Fort Ritchie to Pen Mar Under the Defendants' Comprehensive Redevelopment Plan and the BCA

"The [APA] establishes a 'presumption of judicial review' at the behest of those adversely affected by agency action." *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1513 (D.C.Cir.1989) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). The APA sets forth the procedures by which federal agencies are held accountable to the public and their actions made subject to judicial review. *See Franklin v. Massachusetts*, 505 U.S. 788, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992). Pursuant to the APA, a court may set aside any agency

action found to be arbitrary, capricious, an abuse of discretion, or contrary to applicable law. *See* 5 U.S.C. § 706(2). Such a review, however, is only available "to the extent that statutes [do not] preclude judicial review and the agency action is [not] committed to agency discretion by law." *Cohen v. Rice*, 800 F.Supp. 1006, 1009 (D.Me.1992) (quoting 5 U.S.C. § 701(a)). Finally, the APA authorizes judicial review only of "final agency action for which there is no other adequate remedy in a court." *See* 5 U.S.C. § 704. A key issue at the heart of the instant dispute is whether the challenged actions are "final actions" within the meaning of the APA.

In assessing the finality of the Secretary of the Army's decision, the court looks to *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), in which the Supreme Court stated that the finality of agency action depends on whether its impact "is sufficiently direct and immediate and has a direct effect on day-to-day business." *See id.* An agency action is not final if it is the ruling of a subordinate official or only tentative in nature. *See id* at 151, 87 S.Ct. 1507. The core issues that this court must address are whether the agency has completed its decision-making process and whether the result of that process is one that will directly affect the parties. *See id.*

The standard guiding the court's review of final agency action *requires* deference to the reasonable decision of the agency in light of its expertise in the field. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 42–43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (emphasis added). Moreover, the central question presented herein is not whether other options, such as directly transferring the surplus property to the plaintiff, could have been adopted by the defendants, but

whether the defendants' actual decision is rational. *See id.* at 43, 103 S.Ct. 2856.

The BCA provides the defendants with broad authority. Generally speaking, the BCA authorizes the defendants to take all necessary actions to implement closure or realignment of military installations. *See* § 2905(a)(1)(A). . Those actions include acquiring land, constructing replacement facilities, and conducting the advance planning and design required to relocate functions from a closed or realigned installation to another installation. *See id.*

The plaintiff challenges the defendants' decision to transfer Fort Ritchie to Pen Mar. The Defense Base Closure and Realignment Act of 1994 ("DBCRA") is an attempt to legislate the process by which domestic military installations are closed and realigned. The DBCRA provides a selection process for unneeded military installations to be closed or realigned. *See* Pub.L. No. 101–510, §§ 2901–2910, 104 Stat. 1808 (1990), as amended by Pub.L. No. 102–190, § 2801, 105 Stat. 1290 (1991). Through the DBCRA, Congress established an independent Defense Base Closure and Realignment Commission ("the Commission") to meet in 1991, 1993, and 1995. *See id.* It requires the Secretary of Defense to develop a six-year force structure plan, which assesses national security threats and the force structure needed to meet such threats. *See Charles E. Smith Mgmt., Inc. v. Aspin,* 855 F.Supp. 852, 854 (E.D.Va.1994). The DBCRA also requires the Secretary of Defense to publish in the *Federal Register,* for notice and comment, the selection criteria the Secretary proposes to use to recommend installations for closure and realignment. *See id.* With these principles in mind and based on the record before it, the court concludes that the plaintiff has failed to demonstrate a likelihood of success on the merits of the plaintiff's claim that the defendants' decision to transfer the property to Pen Mar

was improper. *See Taylor,* 56 F.3d at 1506; *Sea Containers Ltd.,* 890 F.2d at 1208; *Holiday Tours, Inc.,* 559 F.2d at 843.

The defendants have offered several circumstances to support the defendants' decision to transfer the property to Pen Mar. Namely, the defendants assert that Pen Mar is a creature of Maryland statute set up to serve as the redevelopment authority for the purposes of managing the disposed property and as the single point of contact for redeveloping the base. Under this arrangement, Pen Mar is still leasing the property from the Army. As such, no transfer of title has taken place and, pursuant to the APA, no final agency decision has been completed. *See* 5 U.S.C. § 704. Further, no deed has been recorded showing the transfer of the property. Because it appears that the Army acted within the proper scope of its discretion, and because the Army appears to have provided a reasonable explanation for why it has not improperly transferred the property to Pen Mar, the plaintiff has failed to show a likelihood of success on the merits for this claim. *See id.*

**(ii) The Plaintiff's Claim Relating to the Screening for Public Benefit Conveyance Under the Federal Property and Administrative Services Act and the BCA**

The court now examines the plaintiff's right to maintain claims for equitable relief with respect to the screening for public benefit conveyance under the Federal Property and Administrative Services Act ("FPASA"). The FPASA was enacted in 1949 to establish an "economical and efficient system" for the procurement, utilization, and disposal of real and personal property under the control of federal agencies. *See* 40 U.S.C § 471 *et seq.* In furtherance of this policy, the statute directs federal agencies to maintain adequate in-

ventories of the property under their control and to identify excess property for transfer to other agencies who are able to use it. *See* 63 Stat. 384, as amended 40 U.S.C. § 483(b)(c).[3] Property that has outlived its usefulness to the federal government is declared "surplus"[4] and may be transferred to private or other public entities. *See generally* 63 Stat. 385, as amended 40 U.S.C. § 484. The Administrator of the General Services Administration ("GSA") may determine the extent and amount of reimbursement for such transfers of excess property.[5] *See id.* at § 483(a).

The plaintiff contends that the court should interpret the BCA, in concert with the FPASA, as requiring the public benefit screening to take place before submission of the redevelopment plan to the U.S. Department of Defense ("DoD") and the U.S. Department of Housing and Urban Development ("HUD"). The court, however, sees no implicit or explicit directive in the statute or its legislative history requiring GSA to pay particular attention to the plaintiff's interests in deciding how to dispose of an excess or surplus site. *See Rhode Island Comm. on Energy v. GSA*, 561 F.2d 397, 402 (1st Cir.1977). At most, the statute guides GSA's actions in choosing among federal, public, and private entities requesting the conveyance of excess or surplus property. *See id.*

In the instant action, GSA does not have exclusive authority over the Fort Ritchie property because Fort Ritchie is a military installation[6] within the meaning of the BCA and, therefore, the defendants' recommendation to transfer the property to Pen Mar does not exceed the control and authority of the defendants provided by the BCA. Under the BCA, however, in order to expedite implementation of the Commission's recommendations, GSA delegates to DoD its statutory authority over the management and disposal of federal property on closed military bases. *See* 10 U.S.C. § 2687 note 9, § 2905(b)(1). In turn, DoD redelegates that authority to the individual armed services for their respective installations. *See* 41 C.F.R. § 101–47.6.

### (Post–Federal Screening Process Under the McKinney Homeless Assistance Act)

After federal screening ends, the next step of the property disposal process takes place under the McKinney Homeless Assistance Act ("McKinney Act"). *See* 42 U.S.C. § 11411. The McKinney Act allows unutilized and underutilized federal property to be made available for use as homeless shelters. *See Nat'l Law Ctr. on*

---

**3.** The FPASA defines "excess property" as "property under the control of any federal agency which is not required for its needs and the discharge of its responsibilities." 63 Stat. 378, as amended 40 U.S.C § 472(e).

**4.** The FPASA defines "surplus property" as "any excess property not required for the needs and the discharge of the responsibilities of all [f]ederal agencies, as determined by the Administrator of the General Services Administration ("GSA")." 63 Stat. 379, as amended 40 U.S.C. § 472(g).

**5.** The FPASA provides that GSA's Administrator shall have supervision and direction over

the disposition of surplus property and establish guidelines for disposal by bid or negotiations. *See* 40 U.S.C. § 484.

**6.** *See* 10 U.S.C. §§ 2687, 2909(a). According to the Base Closure Act, a "military installation" is a base, camp, post, station, yard, center, homeport for any ship, or other activity under the jurisdiction of DoD, including any leased facility. That term's definition does not include any facility used primarily for civil works, rivers and harbor projects, flood control, or other projects not under the primary jurisdiction or control of DoD.

*Homelessness & Poverty v. United States Veterans Admin.*, 819 F.Supp. 69 (D.D.C. 1993). Real property and facilities on a base scheduled to be shut down generally meet this definition. *See* 41 C.F.R. § 101–47.9. Pursuant to the McKinney Act, the disposal agency submits a property description to HUD, which determines whether any of the property is suitable for use by the homeless and then the disposal agency publishes that determination in the *Federal Register. See* 42 U.S.C. § 11411. In an attempt to minimize conflicts, Congress amended the BCA to require a homeless provider to express interest in the property within 60 days, and then apply for the property within 90 days after HUD determines the property is suitable for use by the homeless. *See* § 2905, note 57. If a homeless provider fails to act within either of these prescribed periods, the local redevelopment authority may acquire the property under a right of first refusal for one year that is superior to any right which a homeless provider may have under the McKinney Act. *See id.* Accordingly, the Army's authority over the management and disposal of Fort Ritchie to Pen Mar fits within the meaning of the BCA. *See id.* Pursuant to the FPASA and the McKinney Act, Pen Mar *may* acquire the real surplus property through the public benefit screening process. *See* 41 C.F.R. § 101–47.3; 41 C.F.R. § 101–47.303; 3 C.F.R. § 197. The court concludes that the plaintiff has failed to demonstrate a likelihood of success on this claim. *See Taylor,* 56 F.3d at 1506; *Sea Containers Ltd.,* 890 F.2d at 1208; *Holiday Tours, Inc.,* 559 F.2d at 843.

**(iii) The Plaintiff's Claim Relating to the Lack of Proper and Adequate Notice of the Availability of the Surplus Property at Fort Ritchie under the Base Closure Act**

The court now turns to the plaintiff's claim that the defendants did not give proper and adequate notice of the availability of the surplus property at Fort Ritchie. ·Pursuant to the BCA, the notice criteria requires publication in the *Federal Register. See* 10 U.S.C. § 2687. The BCA specifically provides that upon the recognition of a redevelopment authority for an installation the Secretary of Defense shall publish information on buildings and property identified as excess property or surplus property in the *Federal Register* and in a newspaper of general circulation in the communities within the vicinity of the installation. *See* 10 U.S.C. § 2905(7)(B)(IV)(ii).

The plaintiff argues that the defendants' notice of the public benefit conveyance was inadequate. *See* Pl.'s Mem. in Supp. of Prelim. Inj. Mot. p. 2 ¶ 1. The plaintiff points to the notice as lacking information regarding the screening for public benefit conveyances. *See generally* Pl.'s Prelim. Inj. Mot. Under the BCA, however, the notice criteria clearly calls for the notice's publication in the *Federal Register* and a newspaper of general circulation. *See* 10 U.S.C. § 2905(7)(B)(IV)(ii). The defendants submitted to this court a notice published in the *Federal Register,* Vol. 61, No. 92 on Friday, May 10, 1996. *See* Def.'s Ex. 1. The defendants also submitted an announcement published under the legal notices section of the Friday, May 10, 1996 edition of the *Herald–Mail. See* Def.'s Ex. 2. As such, it seems clear that compliance with the applicable notice criteria has been met by the defendants. *See* 10 U.S.C. § 2905(7)(B)(IV)(ii).

To be sure, in *Charles E. Smith Mgmt., Inc.,* the court interpreted the BCA notice provision to direct the Secretary of Defense to summarize in the *Federal Register* the process by which each installation was recommended for closure or realignment and to provide a justification for each recommendation. *See Charles E. Smith Mgmt., Inc.,* 855 F.Supp. at 854. Further-

more, the notice provision required publication of any proposed changes to the Secretary's recommendations in the *Federal Register* and to hold public hearings on the proposed changes. *See id.* Similarly, in *Cohen,* the Secretary was also required to formulate criteria for use in identifying bases for closure and realignment. *See Cohen,* 800 F.Supp. at 1009. The criteria had to be published in the *Federal Register* for public notice and comment. *See id.*

■ Accordingly, as stated earlier, the court believes that the defendants have subscribed to the notice requirement within the realm of surplus availability under the provisions of FPASA and the BCA. Indeed, the notices published by the defendants sufficiently detail the necessary information for a prospective party to submit a notice of interest to the redevelopment authority. *See* Def.'s Ex. 1, 2. Moreover, the plaintiff submitted to the court numerous articles obtained from the press regarding the transfer of the Fort Ritchie property. *See* Pl.'s Ex. 2. As such, the plaintiff's argument that there was no specific notice given with respect to the public benefit conveyance is unpersuasive and misguided. The plaintiff is misinterpreting the BCA if it believes that the disposal agencies must extend a personal invitation to every party interested in surplus property. *See* § 2905(7)(b)(IV)(ii); *Charles Smith Mgmt., Inc.,* 855 F.Supp. at 854. To read such a requirement into the statute would contravene the very purpose of the BCA, that is, to publish a general public notice. *See id.* Because it appears that the Army complied with the notice requirements of the BCA, *Charles E. Smith Mgmt., Inc.,* 855 F.Supp. at 854; *accord Cohen,* 800 F.Supp. at 1009, the plaintiff cannot show a likelihood of success on the merits on this claim. *See Taylor,* 56 F.3d at 1506; *Sea Containers Ltd.,* 890 F.2d at 1208; *Holiday Tours, Inc.,* 559 F.2d at 843.

## 2. The Plaintiff Fails to Demonstrate That Irreparable Harm Would Result in the Absence of a Preliminary Injunction

■ Turning now to the second prong of the four-part test, for the court to grant a preliminary injunction, the plaintiff must show that irreparable harm will result absent immediate intervention by the court. *See Miami Building & Construction Trades Council v. Secretary of Defense,* 143 F.Supp.2d 19, 27 (D.D.C.2001). To constitute irreparable harm, the injury must be certain and great; it must be actual and not theoretical. *See Wisconsin Gas Co. v. FERC,* 758 F.2d 669, 674 (D.C.Cir.1985). The plaintiff advances essentially two arguments to demonstrate irreparable harm: (1) that once the defendants transfer the surplus property to Pen Mar, the plaintiff will not be able to challenge the transfer, and will have no choice but to comply with the agency's decision and; (2) that if the defendants transfer title to Pen Mar, it will foreclose any opportunity to acquire the surplus property in the future. The court rejects both arguments.

First, the plaintiff's argument that compliance with an agency decision is irreparable harm is unsupported. *See CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995). Under the APA, a final agency decision has not occurred. *See* 5 U.S.C. § 704; *Abbott Laboratories,* 387 U.S. at 151–52, 87 S.Ct. 1507; Def.'s Opp'n ¶ A. Even if Pen Mar takes and perfects title to the property, the plaintiff will continue to occupy the property under its sublease agreement with Pen Mar. *See* Pl.'s Ex. 9 ¶¶ 1.2, 1.4. Accordingly, the plaintiff will continue to conduct its academy for the remainder of the lease term even if the subject property eventually passes to Pen Mar. *See id.* This set of facts does not suggest that the

plaintiff faces imminent irreparable harm. *See Miami Building* at 27; *Wisconsin Gas Co.,* 758 F.2d at 674.

 Second, the plaintiff contends that if the defendants transfer title to Pen Mar, then the surplus property will be beyond reach for acquisition. The mere possibility of a transfer of title is not enough to substantiate a basis for irreparable harm. *See Connecticut v. Massachusetts,* 282 U.S. 660, 674, 51 S.Ct. 286, 75 L.Ed. 602 (1931); *accord Wisconsin Gas Co.,* 758 F.2d at 674. The implication of potential future acts is not the type of injury normally considered to be irreparable for purposes of a preliminary injunction. *See Wisconsin Gas Co.,* 758 F.2d at 674; *Ashland Oil Inc. v. FTC,* 409 F.Supp. 297, 307 (D.D.C.1976), *aff'd* 548 F.2d 977 (D.C.Cir.1976) (citations and internal quotations omitted). Moreover, the cases cited by the plaintiff do not support its argument. For example, the plaintiff makes reference to *National Coalition for Homeless v. U.S. Veterans' Admin.,* 695 F.Supp. 1226 (D.D.C.1988), where irreparable harm was found on the basis of a unique, imminent, and unprecedented crisis due to the lack of shelter for the homeless. *See id.* at 1234. In the instant action, no such crisis exists to warrant interim injunctive relief. *But see id.* Assuming *arguendo* that economic loss has or will occur as a result of the title transfer to Pen Mar, it is well established in this circuit that economic loss does not, in and of itself, constitute irreparable harm. *See Wisconsin Gas Co.* at 674. Along the same line of reasoning, the D.C. Circuit has pronounced that:

> [a] disappointed bidder that claims illegality in a procurement alleges an injury beyond its economic loss of the contract. The disappointed bidder may also claim injury to its right to a legally valid procurement process. This right is implicitly bestowed on all bidders by the mandatory language of the federal procurement statutes and by the contractual invitation to bid embodied in the solicitation.

*See National Maritime Union of America v. Commander, MSC,* 824 F.2d 1228, 1237 (D.C.Cir.1987) (citations omitted).

The plaintiff argues that it has been deprived of a legally valid procurement process and has thus suffered an irreparable injury. The court rejects this argument in light of the fact that the plaintiff has failed to persuade the court that it has presented a substantial case on the merits on its claim that the procurement process was legally invalid. *See O'Donnell Construction Company v. District of Columbia,* 963 F.2d 420 (D.C.Cir.1992) (finding irreparable harm present in a disappointed bidder action after determining the plaintiff had demonstrated a strong showing that it was likely to prevail on the merits). As the Supreme Court has recognized,

> the key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*See Sampson v. Murray,* 415 U.S. 61, 88–90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *accord Wisconsin Gas Co.* 758 F.2d at 674.

Finally, while there may be some possibility that the Army may transfer the surplus property to Pen Mar during the pendency of the lawsuit, this is highly speculative. Furthermore, to the extent that the litigation has created uncertainty, the plaintiff itself has helped create the uncertainty by initiating the litigation. Accordingly, the plaintiff has not made a showing that irreparable harm will result absent immediate intervention by the

court. *See Miami Building,* 143 F.Supp.2d at 27.

3. The Plaintiff Fails to Demonstrate That the Balance of Harms Favors the Issuance of a Preliminary Injunction

Turning to the third prong of the four-part test, for the court to grant a preliminary injunction, the plaintiff must show that other interested parties will not suffer substantial harm if the injunction is granted. *See Virginia Petroleum Jobbers Assoc. v. FPC,* 259 F.2d 921 (D.C.Cir. 1958). Assuming *arguendo* that the plaintiff has made the requisite showing on the first two prongs, the court would still conclude that the issuance of an injunction would have a serious adverse effect on other interested parties. *See id.* at 924–25. Relief saving one party from irreparable injury, at the expense of similar harm caused to another, might not qualify as the equitable judgment that an injunction represents. *See* id. at 925. The plaintiff, however, fails to demonstrate why the balance of harms favors the issuance of the requested interim injunctive relief. In addition, the plaintiff has not devoted substantial time and effort in discussing the balance of harms factor. To wit, the plaintiff merely states, without providing any authority, that "[n]o one will be irreparably harmed if the court grants a TRO and a preliminary injunction." Pl.'s TRO Mot. at 18; Pl.'s Prelim. Inj. Mot. at 3 (repeating the same statement *verbatim*). As such, the plaintiff has failed to persuade the court of this point let alone convince the court that it has a basis to complain of potential losses or inconvenience to other parties. *See Virginia Petroleum Jobbers Assoc.* at 921, 925. Accordingly, the plaintiff has not made the necessary showing with respect to the third prong of the four-part test that would favor issuance of a preliminary injunction. *See Taylor,* 56 F.3d at 1506; *Sea Containers Ltd.,* 890 F.2d at 1208; *Holiday Tours, Inc.,* 559 F.2d at 843.

4. The Plaintiff Fails to Demonstrate That the Public Interest Favors the Issuance of a Preliminary Injunction

Finally, the court examines the last prong of the four-part test against the claims made by the plaintiff in its motions for injunctive relief. Here too, the plaintiff has not developed its argument to justify such relief. The plaintiff has not devoted substantial time in discussing the public interest considerations, as such, it is unnecessary to address this issue at length. The court notes that no authority has been advanced to buttress the plaintiff's conclusory assertion that "[t]he public interest is ... served by requiring the [d]efendants to comply with the law ..." Pl.'s TRO Mot. at 19; Pl.'s Prelim. Inj. Mot. at 3. Moreover, this court recognizes that the public has an interest in seeing the congressionally created process of transferring title to closed military bases under the BCA continue. Even if the court assumes the plaintiff's assertion is correct with respect to the public interest prong, it does not outweigh the court's determination that the plaintiff has failed to demonstrate a likelihood of success on the merits or that it would suffer irreparable harm without a temporary restraining order or preliminary injunction. *See Taylor,* 56 F.3d at 1506; *Sea Containers Ltd.,* 890 F.2d at 1208; *Holiday Tours, Inc.,* 559 F.2d at 843.

## IV. CONCLUSION

For all of the foregoing reasons, the court denies the plaintiff's motions for a temporary restraining order and a preliminary injunction. Because the court denies the complaint's requested relief in whole, the court denies as moot the defendants' motion to dismiss the complaint with prejudice. Further, the court denies as moot

the plaintiff's motions for expedited consideration of the plaintiff's motion for a preliminary injunction, for a hearing on that motion, and for production of documents. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 14th day of January 2002.